Steven A. HOFFMAN, Plaintiff,

v.

UNITED STATES, Defendant.

No. 02–932 C.

United States Court of Federal Claims.

July 11, 2003.

Stan R. Singleton, Derby, Kansas, for the plaintiff.

John H. Williamson, Trial Attorney; David M. Cohen, Director, Commercial Litigation Branch, Civil Division; and Robert D. McCallum, Jr., Assistant Attorney General, United States Department of Justice, Washington, D.C., for the defendant. Lt. Col. P. Christopher Clark, Air Force Legal Services Agency, of counsel.

## OPINION

HORN, Judge.

In this court, the plaintiff, Steven A. Hoffman, has filed a complaint requesting reinstatement to active duty after involuntary discharge from the United States Air Force, as well as compensation back to the date of discharge. Plaintiff argues that his discharge was "invalid" because the discharge proceedings were procedurally flawed and the evidence as a whole was inadequate to support the decisions of the Air Force. The defendant filed a motion to dismiss for lack of subject matter jurisdiction, or, in the alter-

native, for judgment upon the administrative record, noting that this court generally does not have subject matter jurisdiction over claims for equitable relief. In the alternative, the defendant contends that, should the court treat the complaint as a petition to review the decision of the Air Force Board for Correction of Military Records (AFBCMR), the plaintiff's allegations of error in the discharge process are without merit and the defendant is entitled to judgment as a matter of law on the administrative record. As is discussed more fully below, because plaintiff's attorney indicated his intention not to respond to defendant's dispositive motions, the court relies on the record supplied to the court, including documents attached to the complaint, defendant's Appendix, and the Administrative Record submitted with defendant's motion to dismiss.

## FINDINGS OF FACT

On January 22, 1999, a discharge action was initiated against Captain Steven A. Hoffman, a member of the United States Air Force for over eighteen years. On June 2, 1999, an Air Force Board of Inquiry (BOI) heard evidence relating to the discharge action against the plaintiff. After hearing the evidence, the BOI concluded that the plaintiff had engaged in serious or recurring misconduct and intentional or discreditable mismanagement of his personal affairs that cast doubt on his fitness for retention in the military. The BOI found that the plaintiff had been arrested and incarcerated for violent behavior. For example, according to uncontested information provided to the court, in January, 1992, the plaintiff kicked in a door at his home during a marital dispute, leading to detention by military police. In December, 1996, the plaintiff was arrested and incarcerated by Derby, Kansas police for battery and disorderly conduct when he became intoxicated and violent in the presence of children, including his own son and daughter. Again, in March, 1997, the plaintiff was cited for disorderly conduct by the Derby, Kansas police. In February, 1998, the plaintiff became "violently agitated" and was arrested and charged with two counts of felony aggravated assault against his wife and son. He entered a "no contest" plea on both counts.

A few months later, in April, 1998, the plaintiff violated the conditions of his criminal bond, a district judge's "protection from abuse" order, and his commander's "no contact" order by attempting to contact his ex-wife by telephone. As a result, the plaintiff's bond was revoked and he was incarcerated briefly in Wichita, Kansas.

Based on these incidents, the BOI recommended an under honorable conditions (general) discharge to the Secretary of the Air Force. On January 22, 1999, plaintiff was given notification of the discharge action, with specifics as to the reasons for the discharge, including the arrest and misconduct history discussed immediately above. On the same day, plaintiff acknowledged receipt of the Notification of the Administrative Discharge Action. On October 21, 1999, the Secretary ordered the plaintiff's discharge. The plaintiff was discharged from active duty on November 4, 1999 with a (general) discharge under honorable conditions.

On August 11, 2000, the plaintiff submitted an application to the AFBCMR for reinstatement to active duty, citing several reasons why his discharge was "unjust." The AFBCMR denied Mr. Hoffman's request for reinstatement on March 29, 2001, concluding that the evidence presented "did not demonstrate the existence of probable material error or injustice...."

The plaintiff then filed a complaint in the United States District Court for the District of Kansas on December 21, 2001. The District Court complaint alleged that:

[t]he Plaintiff's discharge was invalid in that the recommendation of the Board of Inquiry for the discharge was based on and was the result of a Board of Inquiry proceedings [sic] that violated Plaintiff's constitutional right of due process guaranteed by the Fifth Amendment to the United States Constitution and also violated Service regulations in that these proceedings were irregularly conducted, the statement of charges was amended without the procedural regularity, and the evidence as a whole was inadequate to support the decisions reached by the Board.

Plaintiff requested a finding that plaintiff's administrative discharge be set aside and for the court to restore plaintiff to his commission as of the date of his discharge. On May 28, 2002, the District Court granted defendant's motion, to which plaintiff did not respond, to transfer the case to this court. *See Hoffman v. United States*, Civil Action No. 01–1435–MLB, Order Transferring Case to the United States Court of Federal Claims, at 1 (D.Kan. May 28, 2002). Plaintiff filed a complaint in this court on October 9, 2002.

## DISCUSSION

The defendant has filed a motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), arguing that this court is without subject matter jurisdiction because the plaintiff seeks only equitable relief. In the alternative, defendant has moved for judgment upon the Administrative Record.

Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte*, even on appeal. *Fanning, Phillips, Molnar v. West*, 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (1993)); *United States v. Newport News Shipbuilding & Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998); *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1324 (Fed.Cir.1997); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991); *Bowen v. United States*, 49 Fed.Cl. 673, 675 (2001) (noting that the plaintiff bears the burden of proof on a motion to dismiss for lack of jurisdiction), *aff'd*, 292 F.3d 1383 (Fed.Cir. 2002); *Schweiger Const. Co. v. United States*, 49 Fed.Cl. 188, 205 (2001); *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404 (1994). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Thomas v. United States*, 56 Fed.Cl. 112, 115 (2003);

*Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001), *aff'd in part*, 281 F.3d 1376 (Fed. Cir.), *reh'g denied* (2002); *Bowen v. United States*, 49 Fed.Cl. at 675; *Vanalco, Inc. v. United States*, 48 Fed.Cl. 68, 73 (2000); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed. Cir.1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Brubaker Amusement Co., Inc. v. United States*, 304 F.3d 1349, 1355 (Fed.Cir.2002), *cert. denied sub nom. Penn Triple S. v. United States*, — U.S. —, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003); *Leider v. United States*, 301 F.3d 1290, 1295 (Fed.Cir.2002), *reh'g and reh'g en banc denied* (2002), *cert. denied*, — U.S. —, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003); *Conti v. United States*, 291 F.3d 1334, 1338 (Fed.Cir.2002), *cert. denied*, 537 U.S. 1112, 123 S.Ct. 904, 154 L.Ed.2d 785 (2003); *Consolidated Edison Co. v. O'Leary*, 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied sub nom. Consolidated Edison Co. v. Pena*, 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *see also New Valley Corp. v. United States*, 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (1997); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied*, 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir.1989); *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed. Cir.1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must be denied.' "); *RCS Enters., Inc. v. United States*, 46 Fed.Cl. 509, 513 (2000).

Pursuant to Rule 8(a)(1) of the Rules of the Court of Federal Claims (RCFC) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the

grounds upon which the court's jurisdiction depends." However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed.Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding a motion to dismiss based on lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. 99; *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed.Cir.2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed.Cir. 2002); *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1338 (Fed.Cir.2001) (quoting *New Valley Corp. v. United States*, 119 F.3d at 1580), *cert. denied*, 535 U.S. 1096, 122 S.Ct. 2293, 152 L.Ed.2d 1051 (2002); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000); *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d at 1167 (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991)); *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States*, 873 F.2d at 1416; *Ho v. United States*, 49 Fed.Cl. 96, 100 (2001), *aff'd*, 30 Fed.Appx. 964 (Fed.Cir.2002); *Alaska v. United States*, 32 Fed.Cl. at 695. If a defendant or the court challenges jurisdiction, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. at 189, 56 S.Ct. 780; *see also Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 747; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. at 404–05. When considering a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to resolve any factual disputes. *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 747; *see also Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed.Cir. 1993) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."), *cert. denied*, 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994); *Vanalco v. United States*, 48 Fed.Cl. at 73 ("If the truth of the alleged jurisdictional facts is challenged in a motion to dismiss, the court may consider relevant evidence to resolve the factual dispute.").

■ In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491 (1994). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal

constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir. 1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr,* 533 U.S. 289, 299, 121 S.Ct. 2271, 150 L.Ed.2d 347 n. 10 (2001); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States,* 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001); *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims, " 'it does not create any substantive right enforceable against the United States for money damages.' " *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Mountain Apache Tribe v. United States,* 249 F.3d 1364, 1372 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001), *aff'd,* 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369, 1373 (Fed.Cir.2000); *cert. denied,* 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001);

*New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555–56 (Fed.Cir.1997), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.' " *White Mountain Apache Tribe v. United States,* 249 F.3d at 1372 (quoting *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948; *Tippett v. United States,* 185 F.3d 1250, 1254 (Fed.Cir.1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998), *reh'g denied* (1999)); *Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir. 1996), *reh'g denied and en banc suggestion declined* (1997); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009.

The plaintiff's complaint filed in this court cites as its jurisdictional bases the same jurisdictional bases cited by the plaintiff in the earlier federal district court action, without amendment of the complaint to meet the jurisdictional requirements of this court.[1] Plaintiff cites 28 U.S.C. § 1331 (2000) (federal question jurisdiction in federal district court) and 28 U.S.C. §§ 2201–2202 (2000) (providing for declaratory judgments in fed-

---

**1.** After the case was transferred, plaintiff filed a complaint in this court, which is identical to the complaint filed in federal district court, except the plaintiff changed the heading of the complaint to read "IN THE UNITED STATES COURT OF FEDERAL CLAIMS." In the first paragraph of the complaint filed in this court, plaintiff even left in the following words: "The cause of action set forth hereinbelow involves facts that arose within the State of Kansas, thus

jurisdiction properly lies in the United States District Court for the District of Kansas." The complaint also requests a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202 and "ancillary injunctive relief." Plaintiff also inappropriately invokes jurisdiction under 28 U.S.C. § 1331(a) and the Administrative Procedure Act, 5 U.S.C. §§ 701, et seq., and designates the United States District in Wichita, Sedgwick County, Kansas as the site for trial.

eral district court). These statutes, however, do not provide jurisdiction in the United States Court of Federal Claims. *See James v. Caldera,* 159 F.3d 573, 579 (Fed.Cir.1998), *reh'g denied* (1999).

The plaintiff also cites as a jurisdictional basis the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.* (1994)(APA). In general, the APA addresses challenges to agency action which are to be conducted in federal district court, rather than in the Court of Federal Claims, since the APA waives sovereign immunity only for claims seeking "relief other than money damages." 5 U.S.C. § 702; *see also Mitchell v. United States,* 930 F.2d 893, 894 (Fed.Cir.1991). Money damages claimed against the sovereign, however, are the cornerstone of this court's Tucker Act jurisdiction. The United States Court of Appeals for the Federal Circuit noted in *Consolidated Edison Company of New York, Inc. v. United States* that:

> The Supreme Court has explained that a litigant may invoke the APA as a waiver of sovereign immunity, thereby invoking district court jurisdiction, if the litigant can satisfy both 5 U.S.C. § 702 (by requesting "relief other than money damages") and 5 U.S.C. § 704 (1994) (no "adequate remedy" is available elsewhere, such as the Court of Federal Claims). *Bowen v. Massachusetts,* 487 U.S. [879, 892–93, 904–05, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988)].

*Consol. Edison Co. of New York v. United States,* 247 F.3d 1378, 1382 (Fed.Cir.), *cert. denied,* 534 U.S. 1054, 122 S.Ct. 644, 151 L.Ed.2d 562 (2001); *see also Vereda, Ltda. v. United States,* 271 F.3d 1367, 1375 n. 8 (Fed. Cir.2001) ("[T]he Court of Federal Claims lacked the general federal question jurisdiction of the district courts, which would have allowed it to review the agency's actions and to grant relief pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706.").

Although the plaintiff cites to inappropriate sources to establish jurisdiction in this court, plaintiff, in essence, seeks to have this court review the decision of the AFBCMR which found his discharge proper. Alleging that his discharge from military office was wrongful, plaintiff seeks restoration of his commission and appropriate compensation back to the date of discharge. If the plaintiff had not been discharged from active duty, he would have been entitled to basic pay by statute. *See* 37 U.S.C. § 204(a)(1) (2000).[2] This statutory right to compensation serves as the basis for Tucker Act jurisdiction over plaintiffs claim in the Court of Federal Claims. Case law also supports jurisdiction in the United States Court of Federal Claims for plaintiffs seeking relief in cases of alleged improper involuntary discharge from the military, reinstatement and lost pay. *See, e.g., Tippett v. United States,* 185 F.3d 1250, 1255 (Fed.Cir.1999) ("If Tippett's discharge was involuntary and improper, his statutory right to pay was not extinguished and thus serves as a basis for Tucker Act jurisdiction."); *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.1997) ("If the discharge was wrongful the statutory right to pay continues; this right serves as the basis for Tucker Act jurisdiction."); *Adkins v. United States,* 68 F.3d 1317, 1321 (Fed.Cir.1995), *reh'g denied* (1996); *Mitchell v. United States,* 930 F.2d at 896 ("Indeed the experience of the Court of Claims in military pay cases extends back to the nineteenth century origins of the court."); *Sargisson v. United States,* 913 F.2d 918, 920 (Fed.Cir.), *reh'g denied* (1990); *Sanders v. United States,* 219 Ct.Cl. 285, 295–97, 594 F.2d 804, 810–811 (1979). *See also Richey v. United States,* 322 F.3d 1317, 1323 (Fed.Cir. 2003) ("If an officer elects to pursue a remedy before the Corrections Board, after the Board renders a final decision, the officer may effectively obtain review of that decision in the Court of Federal Claims by filing suit under the Tucker Act."). The court is authorized under the Tucker Act, 28 U.S.C. § 1491(a)(2),[3] to provide complete relief. *See*

---

**2.** "Entitlement (a) The following persons are entitled to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service computed under section 205 of this title–

(1) a member of a uniformed service who is on active duty[.]" 37 U.S.C. § 204(a)(1).

**3.** "To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any

*also Mitchell v. United States,* 930 F.2d at 896.

The United States Court of Appeals for the Federal Circuit has advised, however, that:

> responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence. Thus, although judicial review of military service determinations with monetary consequences is available, the review jurisdiction has been summarized:
>
>> [R]eview of the administrative decision is limited to determining whether the * * * action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced. [Citations omitted.]
>
> *Clayton v. United States,* 225 Ct.Cl. 593, 595, 1980 WL 13179 (1980).

*Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983) (footnotes omitted; alterations in original).[4] Similarly, in *Porter v. United States,* the Federal Circuit indicated: "When called upon to review a decision of a corrections board, or of a Secretary taken upon recommendation from a corrections board, the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *See Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824 (1979)." *Porter v. United States,* 163 F.3d 1304, 1312 (Fed.Cir.1998), *cert. denied,* 528 U.S. 809, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999). In *Skinner v. United States,* the United States Court of Claims articulated its authority to review and correct

legal errors, such as when a corrections board violated statute or regulations, was improperly constituted, or issued improper decisions because of consideration of illegally prepared or omitted material in selection folders. *See Skinner v. United States,* 219 Ct.Cl. at 330–332, 594 F.2d at 829–30.

The *Skinner* court also identified authority to correct injustice not amounting to legal error, as follows:

> It takes more than an unfair rating or simple injustice to merit our consideration or judicial relief. It must be an unlawful act made so by violation of statute, or regulation, or published mandatory procedure, or unauthorized act, or so unsupported by the evidence as to be a gross injustice, unlawful because of clear legal or factual error, manifest abuse of discretion, or arbitrary and capricious action amounting to bad faith or fraud, and seriously prejudicial.

Judicial review of a corrections board should not, however, be an opportunity for courts to substitute their judgment for that of the board when reasonable minds could reach differing conclusions. *See Sanders v. United States,* 219 Ct.Cl. at 303–05, 594 F.2d at 814–15.

In military pay cases, the burden of proof is on the plaintiff. As stated in *Fluellen v. United States:*

> The plaintiff bears the burden of showing that the AFBCMR's [Air Force Board for Correction of Military Records] action was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir. 1986)[, *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986)]; *Hoskins v. United States,* 40 Fed.Cl. 259, 271–72 (1998). To prevail under the arbitrary and

---

appropriate official of the United States." 28 U.S.C. § 1491(a)(2).

**4.** Deference to the military on questions of fitness to serve in the military derives from *Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842, *reh'g denied,* 345 U.S. 931, 73 S.Ct. 779, 97 L.Ed. 1360 (1953), in which the Court wrote: "Orderly government requires that the judiciary be as scrupulous not to interfere with

legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. While the courts have found occasion to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service."

capricious standard, plaintiff must demonstrate that evidence was ignored or unreasonably construed, or that designated duties were not performed by the AFBCMR. *Kirwin [v. United States]*, 23 Cl.Ct. 497, 502 [1991]. Moreover, "plaintiff must overcome the presumption that 'administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.'" *Chayra v. United States*, 23 Cl.Ct. 172, 178 (1991), quoting *Sanders [v. United States*, 219 Ct. Cl. 285, 302, 594 F.2d 804, 813 (1979)]. "While the court might disagree with the board's decision, it cannot substitute its own judgment for the board's if reasonable minds could reach differing resolutions of a disputed fact." *Chayra*, 23 Cl.Ct. at 178–179.

*Fluellen v. United States*, 44 Fed.Cl. 97, 101 (1999), *aff'd*, 225 F.3d 1298 (Fed.Cir.2000). The Federal Circuit also has written that "a soldier who has sought relief from a correction board is bound by its decision unless he can demonstrate by 'cogent and clearly convincing evidence that the correction board acted arbitrarily, capriciously, contrary to law, or that its determination was unsupported by substantial evidence.'" *Dodson v. United States*, 988 F.2d 1199, 1204–05 (Fed. Cir.1993), *reh'g denied* (1993) (citations omitted).

As noted above, plaintiff's attorney has declined to file a response to the defendant's dispositive motions. Plaintiff's response to defendant's motion to dismiss, or, in the alternative, for judgment on the administrative record, was required to be filed on or before June 13, 2003. After the time for filing plaintiff's response had elapsed, the court's law clerk telephoned plaintiff's attorney of record, Stan R. Singleton, KS SC # 09886, of Derby, Kansas, to inquire if plaintiff intended to request that a response to defendant's motions be filed out of time. Mr. Singleton verbally confirmed that he was aware of the June 13, 2003 deadline for filing a response to defendant's motion, that plaintiff had not filed a response to defendant's motions on or before that date, and further advised that plaintiff would not be filing any response to the defendant's motions at any time. Mr. Singleton also indicated that he would file a

short written notice with the court indicating that plaintiff will not be filing a response to defendant's motions. No such notice, however, was received from Mr. Singleton. The court's law clerk subsequently called Mr. Singleton's office, inquiring about the promised notice to the court, which had not been received. Mr. Singleton's assistant advised that Mr. Singleton's was unavailable, but that she would communicate the message to Mr. Singleton. No further notice or other communication has been received by the court, as of the date of this opinion.

Despite plaintiff's attorney's minimalist approach, plaintiff is bound by the actions of his attorney. As the United States Supreme Court has stated:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

*Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (quoting *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955 (1879)) (footnote omitted), *reh'g denied*, 371 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112 (1962); *see also Pioneer Investment Servs. v. Brunswick Assocs. Ltd Partnership*, 507 U.S. 380, 396, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ("[W]e have held that clients must be held accountable for the acts and omissions of their attorneys."). Accordingly, in the present case, plaintiff is bound by the decision of his attorney not to file a response to the defendant's motion to dismiss, or, in the alternative, for judgment on the administrative record.

▮ In his complaint, plaintiff requests the court to find that his discharge was improper and that he is entitled to "the emoluments of his military office as of the date of his unlawful discharge," presumably including appropriate compensation and benefits. Although the complaint is bald of specific

facts and asserts broad allegations of unfair discharge, in his application for AFBCMR review, the plaintiff stated six reasons for his claims that the BOI discharge recommendation and plaintiff's subsequent discharge were unjust. Plaintiff also argues in his application to the AFBCMR that the discharge was improperly based on the recommendations of a BOI which plaintiff alleges was irregularly conducted and did not support its conclusions. None of the reasons cited by plaintiff, however, sufficiently demonstrates that the corrections board acted arbitrarily, capriciously, contrary to law, or that the board's determination was unsupported by substantial evidence when it reviewed and upheld the Air Force decision to discharge the plaintiff.

The defendant notes that plaintiff's six allegations were analyzed and rejected in "The Memorandum Prepared for the AFBCMR" signed by Colonel R. Philip Deavel, Staff Judge Advocate, contained in the record before the court. Nor have the conclusions contained in the Memorandum or the findings of the AFBCMR been refuted in this court by the plaintiff. Colonel Deavel's memorandum recommended that the relief requested from the AFBCMR be denied because plaintiff had "presented insufficient evidence of an error or injustice in connection with his under honorable conditions (general) discharge for discreditable involvement with civilian or military authorities and serious or recurring misconduct punishable by military or civilian authorities."

In his application to the AFBCMR, plaintiff first alleged that false testimony from his ex-wife at the Board of Inquiry hearing influenced the BOI in its recommendation to discharge the plaintiff. As the AFBCMR summarized: "The theme of applicant's defense is that his marriage was the root cause of the misconduct" attributed to him. Even discounting the ex-wife's testimony, however, the AFBCMR heard sufficient testimony to substantiate plaintiff's indiscretions and miscreant behavior from a civilian police officer, the plaintiff's son, and from the plaintiff himself. The evidence at the Board of Inquiry against plaintiff also included a videotape of damage that the plaintiff caused to his own home; the transcript of an audio tape which recorded the plaintiff screaming and threatening his family during the February, 1998 incident; police reports; and testimony from the plaintiff himself in which he acknowledged committing violent acts toward his son, engaging in alcohol abuse and causing extensive damage to his family home. Even absent plaintiff's ex-wife's allegedly false testimony, the record before the board of plaintiff's misconduct reflected substantial evidence to validate the discharge action.

Second, plaintiff alleged that the BOI violated procedure when it amended the statement of charges after the discharge action had been initiated. Specifically, Mr. Hoffman claimed that the discharge action was initiated in response to an allegation of failure to pay child support, although the record indicates that the statement of charges originally listed a total of six specific incidents. The plaintiff seems to be arguing that once this allegation was shown to be unfounded, the discharge action should have been discontinued. Proper procedure, however, appears to have been followed in amending the statement of reasons, pursuant to Air Force Instruction 36–3206, paragraph 7.25.4.[5] Plaintiff, nor the record, offer any evidence to the contrary.

Plaintiff's third allegation of error is that the BOI did not properly consider the financial consequences of discharge to the plaintiff after over eighteen years of military service. Specifically, in his request to the AFBCMR, the plaintiff refers to 10 U.S.C. § 8911 (2000), which provides for retirement eligibility after twenty years on active duty, and Air Force Instruction 36–3207, paragraph 1.12, which allows a two-year "sanctuary period" from involuntary separation after eighteen years of military service. By involuntarily discharging Mr. Hoffman before he had served twenty years as a regular commissioned officer in the Air Force, according to the plaintiff, the BOI denied Mr. Hoffman

5. Under Air Force Instruction 36–3206, paragraph 7.25.4, "[t]he BOI may amend the Statement of Reasons to: Correct errors."

retirement benefits to which he may otherwise have been entitled. *See* 10 U.S.C. § 8911.

In its Record of Proceedings, the AFBCMR noted that, although plaintiff did not specifically request the board to consider the impact of administrative active discharge after eighteen years, "[t]he BOI was instructed on the economic consequences of its actions on applicant and there is no evidence that those instructions were disregarded." The plaintiff has presented no evidence to the contrary. Moreover, the court notes that Air Force Instruction 36–3207, paragraph 1.12 provides for an exception to the two-year "sanctuary period," as follows: "The Air Force normally doesn't [sic] involuntarily separate officers within 2 years of qualifying for retirement from active service under 10 U.S.C. 8911 or for reserve retirement pay under 10 U.S.C. 1331. EXCEPTION: The SAF [Secretary of the Air Force] may approve or order involuntary separation under adverse conditions for these officers." (Emphasis in original.) Plaintiff's discharge was ordered by the Secretary and falls within the exception, and, therefore, was not contrary to established procedure.

Plaintiff's fourth allegation of error is that the attorney representing the government in the BOI hearing improperly befriended the plaintiff's son in order to elicit testimony against the plaintiff. The attorney allegedly made trips to the eleven-year-old boy's home, gave him rides in the attorney's convertible, took him on a tour of a courtroom, and invited the boy to the legal office for career day. The AFBCMR noted that these actions by the government's attorney were "not truly improper; nor did applicant present evidence of these allegations [to the AFBCMR] to allow further review." Moreover, regardless of plaintiff's assertions of impropriety, there was no indication in the record that his son was led to testify falsely. In sum, the plaintiff has not presented legally significant evidence to the AFBCMR or to this court that the attorney violated statute or regulation.

Plaintiff's fifth argument is that an alleged procedural error occurred because a Board of Review (BOR) was never convened regarding his discharge. The plaintiff pointed to Air Force Instruction 36–3206, paragraph 6.12 (July 6, 2000), allowing respondents in discharge actions to request a copy of BOR proceedings by writing to the National Personnel Records Center.[6] In response to a request for a copy of the transcript from his Board of Review hearing, the plaintiff received a letter from the National Personnel Records Center which stated: "Discharge proceedings are not a matter of record in your personnel file." From this, plaintiff appears to infer that no BOR had been convened in his case.

Prior to plaintiff's discharge, a statutory provision provided for a Board of Review hearing. That statute, however, was repealed before plaintiff's discharge action was initiated. *See* 10 U.S.C. § 1183, "Boards of review," repealed in Pub.L. 105–261, Div. A., Title V, § 503(a), Oct. 17, 1998; *see also* H.R.Rep. No. 105–736, at 655 (1998), "Repeal of Requirement for Duplicative Board.-Section 1183 of title 10, United States Code, is repealed." Prior to the repeal of the statute on October 17, 1998, 10 U.S.C. § 1183 required a Board of Review to consider the recommendation of a Board of Inquiry when a BOI recommended an officer's discharge and to provide a recommendation to the Secretary of the Air Force.[7] However, Congress repealed the section 1183 Board of Review provision on October 17, 1998. The plaintiff's discharge action was initiated on January 22, 1999, three months after the repeal. Since plaintiff's discharge action was initiated after the Board of Review requirement was repealed, the court finds no proce-

---

6. "Respondents may request a copy of unclassified BOR proceedings, by writing to the National Personnel Records Center (NPRC), 9700 Page Blvd, St Louis, MO 63132–6100." AFI 36–3206, ¶ 6.12, "Respondent's Copy of the AFPB Proceedings," July 6, 2000.

7. The statute at 10 U.S.C. § 1183(a) (1994) stated in relevant part: "The Secretary of the military department concerned shall convene boards of review at such times as the Secretary may prescribe to review the cases of officers who a board of inquiry has determined have failed to establish that they should be retained on active duty." *See* the Implementation instruction at AFI 36–3206, ch. 8 (June 19, 1998).

dural error in the absence of evidence of a BOR recommendation.[8] Under the revised law, the Secretary of the Air Force may remove an officer upon the recommendation of a BOI. *See* 10 U.S.C. § 1184 (Supp. IV 1998). Section 1184 states: "The Secretary of the military department concerned may remove an officer from active duty if the removal of such officer from active duty is recommended by a board of inquiry convened under section 1182 of this title."[9] *Id.* There is no dispute that a BOI was convened and recommended discharge in plaintiff's case.

Finally, plaintiff's sixth allegation of error asserts that his discharge was unjust because past commanders and co-workers supported his retention in the Air Force, although it is unclear whether this allegation is one of procedural error or one of improper weighing of the evidence in the correction board's consideration of plaintiff's application to the AFBCMR. Mr. Hoffman's application to the AFBCMR included ten letters of recommendation and character references from previous commanders and military personnel with whom the plaintiff had interacted on a regular basis. These recommendations extol Mr. Hoffman's job performance and value as a member of the Air Force, and recommend his retention in the Air Force. The plaintiff has not shown that the AFBCMR was not properly presented with plaintiff's supporting letters. To the contrary, the AFBCMR Record of Proceedings states that the plaintiff's supporting statements were "duly noted." After review of plaintiff's submissions, the AFBCMR did "not find these assertions and supporting documentation mitigating or sufficiently persuasive to override the evidence of record." It is not the role of this court to substitute its judgment for that of the proper military authorities, when reasonable minds

could come to differing conclusions. *See Heisig v. United States*, 719 F.2d at 1156.

Despite plaintiff's six allegations of error in his discharge proceedings, the record does not reflect that the decision by the AFBCMR was arbitrary, capricious, or unsupported by substantial evidence. The records and evidence before the AFBCMR of plaintiff's misconduct reflect substantial evidence to support plaintiff's discharge, despite his ex-wife's allegedly false testimony. Proper procedure was followed in amending the statement of reasons for plaintiff's discharge when plaintiff showed one of the reasons was unfounded. Plaintiff presented no evidence that the BOI did not properly consider the length of plaintiff's military service and proximity to retirement eligibility when considering his discharge, nor did plaintiff present evidence of legally significant wrongdoing by the attorney representing the government at the BOI. Plaintiff has failed to show procedural error in the absence of a Board of Review hearing or in the AFBCMR's consideration of letters of support submitted by plaintiff. Therefore, the plaintiff has not overcome the strong presumption that the responsible military officials properly exercised their discretion to discharge the plaintiff from the Air Force, and that Air Force officials discharged their duties in good faith. Nor has the plaintiff carried his burden of demonstrating that the AFBCMR's decision was arbitrary, capricious, or unsupported by substantial evidence, such as would require this court to render plaintiff's discharge void.

## CONCLUSION

The court, hereby, **DENIES** the defendant's motion to dismiss for lack of subject matter jurisdiction. Based on a careful review of the record and the arguments pre-

---

8. The Air Force implemented the statutory provision providing for a BOR in its instructions, and, when Congress eliminated the BOR requirement, the Air Force amended its instructions to reflect the congressional decision. *See* AFI 36–3206, ch. 8 (July 6, 2000). When Congress speaks directly to an issue, the agency and the courts must give effect to the intent of Congress. *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the

unambiguously expressed intent of Congress."), *reh'g denied*, 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984).

9. The same statute, before it was amended in October, 1998, had stated, "The Secretary of the military department concerned may remove an officer from active duty if the removal of such officer from active duty is recommended by a board of review convened under section 1183 of this title." 10 U.S.C. § 1184 (1994).

sented, the court **GRANTS** the defendant's motion for judgment upon the administrative record. The Clerk's Office is directed to enter **JUDGMENT** in accordance with this decision.

**IT IS SO ORDERED.**